UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER PALACIO COWAN, | Case No. 11-11840 |
| Plaintiff, | Mark A. Goldsmith |
| v. | United States District Judge |
| ST. JOHNS PROVIDENCE | Michael Hluchaniuk |
| HEALTH SYSTEM, | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Dkt. 6)**

**I.    PROCEDURAL HISTORY**

Plaintiff filed a complaint in state court, which was removed by defendant on April 27, 2011.  (Dkt. 1).  On May 4, 2011, defendant filed a motion to dismiss the complaint.  (Dkt. 6).  Plaintiff filed a response on May 31, 2011.  (Dkt. 9).  Defendant filed a reply on June 17, 2011.  (Dkt. 12).  This motion was referred to the undersigned for report and recommendation by District Judge Mark A. Goldsmith.  (Dkt. 11).  On May 31, 2011, the undersigned held a hearing, pursuant to notice.  (Dkt. 13).  In light of *CIGNA Corp. v. Amara*, ––– U.S. –––, 131 S.Ct. 1866 (2011), the undersigned ordered defendant to file a supplement and identify the governing plan documents.  (Dkt. 15).  Defendant did so on January 31, 2012.  (Dkt. 16).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion to dismiss be **GRANTED** in part and **DENIED** in part and that plaintiff be permitted to amend her complaint.

## II.   FACTUAL BACKGROUND

Plaintiff was an employee of defendant. Plaintiff was covered by a medical plan through her employer. She says she never received a copy of the Summary Plan Description and did not agree to be bound by its terms. In August 2008, plaintiff required treatment for Crohns disease and her physician prescribed Remicade. Defendant initially refused to approve this treatment. Plaintiff appealed that decision and in a letter dated September 26, 2008, that denial was upheld on appeal. That letter indicated that if plaintiff was dissatisfied with the decision, she could seek a second, voluntary review within 60 days of receipt of the letter. The procedure for this review was explained to plaintiff. The letter also indicated that the decision to proceed with (or not proceed with) the voluntary review would not affect her benefits under the plan, her right to information about the applicable rules, or her right to an authorized representative. Plaintiff was given information that she could receive copies of records and documents relating to the decision and if she wanted any "further information on the appeal process, please refer to the FlexSmart Benefit Plan ~ Summary Plan Description." Nothing in this letter mentions plaintiff's right to file a civil lawsuit or the time frame in

which she must do so.

Approximately 10 months later, the Remicade treatment was apparently approved and paid for by defendant. Plaintiff says she suffered extensive physical and financial damage as a result of the delayed treatment and was also inappropriately reprimanded for missing work due to her health issues. According to a letter dated April 22, 2009 from plaintiff's physician, her condition had worsened considerably after being denied the Remicade treatment. Apparently, at some point in 2009 after that letter was written, plaintiff had surgery. Based on these issues, plaintiff was off work for approximately seven months, although the time frame of that leave is not entirely clear.

It is also not entirely clear when plaintiff returned to work. She had returned to work sometime before March 2010, when she began being harassed at work by a coworker. According to plaintiff, defendant finally addressed the issue by placing plaintiff on a paid leave of absence in November, 2010 for 15 days. Plaintiff asserts that defendant breached its agreement to pay her wages while she was on this leave of absence and also required her to pay her own insurance costs while she was on paid leave, in violation of the agreement the parties reached.

Plaintiff brings claims for breach of contract, negligent administration of a health insurance plan, negligent provision of a safe work environment. (Dkt. 1, Ex. 1). Defendant moves to dismiss plaintiff's claims because (1) they are barred by

the statute of limitations contained in the summary plan description governing the health plan, (2) because they are barred by the Workers Compensation statute, and, (3) because plaintiff has failed to identify the contract she claims was breached.

## III. ANALYSIS AND CONCLUSIONS

### A. Statute of Limitations

#### 1. Legal Standards

More often than not, a statute of limitations issue cannot be decided on a motion to dismiss or from the face of a plaintiff's complaint. *See Stiles v. Porter Paint Co.*, 75 F.R.D. 617 (E.D. Tenn. 1976) (In order to support dismissal for failure to comply with statute of limitations, bar of such statute must be clearly apparent from face of complaint, and motion to dismiss based upon statute of limitations will be denied if any issues of fact are involved.). Rather, given the factual issues often involved in such a determination, summary judgment is a more appropriate vehicle. *Abbruzzino v. Hutchinson*, 2009 WL 1015558, *2 (E.D. Mich. 2009). A defendant raising the statute of limitations as an affirmative defense has the burden of proving that the action is time-barred. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). To prevail on this affirmative defense, defendants must prove both that: (1) the statute of limitations has run; and (2) that no genuine issue of material fact exists as to when plaintiff's cause of action accrued. *Id*. If defendants meet this burden, the burden then shifts to

plaintiff to establish an exception to the statute of limitations. *Id*. The nonmoving party may not rest on the mere allegations in the pleadings. *Id*. However, if defendants fail to meet their burden of proof, plaintiff has no obligation to proffer any additional evidence to rebut the statute of limitations defense. *Fonseca v. Conrail*, 246 F.3d 585, 590-91 (6th Cir. 2001).

      2.     Analysis

Defendant argues that plaintiff's claim for "negligent administration of a health plan" must be dismissed because it is a claim for relief under ERISA and is barred by the one year statute of limitations contained in the Summary Plan Description. According to defendant, plaintiff's administrative appeal of the initial denial of Remicade was disposed of on September 26, 2008. (Dkt. 6, Ex. 2). Plaintiff filed this lawsuit in state court on March 22, 2011. (Dkt. 1, Ex. 1). The SPD governing the health plan provides for a one year statute of limitations from the date of the denial in which to file a civil lawsuit. (Dkt. 6, Ex. 1). Thus, defendant asserts that plaintiff's claim is barred.

According to plaintiff, defendant's statute of limitations argument fails for three reasons. First, plaintiff asserts that there is a genuine issue of material fact as to whether plaintiff agreed to be bound by the SPD. Second, the claim at issue is not covered by the SPD because defendant paid for all the treatment plaintiff received. Thus, according to plaintiff, there is no "denial." Third, plaintiff argues

that even if the SPD applies, there is a genuine issue of fact regarding whether the one year limitation period is reasonable, given that a considerable amount of time passed before plaintiff learned that she had been damaged by the denial of Remicade.

In the view of the undersigned, there is not any doubt that plaintiff's claim for "negligent administration of a health plan," no matter how it was pleaded, is an ERISA claim. The United States Supreme Court, in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), explained the breadth and depth of the preemption provision contained in ERISA:

> if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

(Internal citation omitted). One of the claims at issue in *Davila* was the plan's rejection of coverage for a particular medication prescribed by the participant's physician. The Supreme Court held that such a claim fell "within the scope" of ERISA because the action complained of was the refusal to pay for the prescription

and the only relationship the plan had with the insurance company was the administration of the plan. *Id*. at 211. Under such a circumstance, the Court held the participant complained "only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans. Upon the denial of benefits, respondents could have paid for the treatment themselves and then sought reimbursement through a § 502(a)(1)(B) action, or sought a preliminary injunction ..." *Id*. at 211 (citation omitted). That is precisely the circumstance presented by plaintiff's claim for "negligent administration of a health care plan."

The Court also rejected the lower court's decision that the claims were not preempted because tort damages, as opposed to contract damages, were sought:

> But, distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would "elevate form over substance and allow parties to evade" the pre-emptive scope of ERISA simply "by relabeling their contract claims as claims for tortious breach of contract." [*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211(1985)]. Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism. In [*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)], [*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)], and [*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990)], the plaintiffs all brought state claims that were labeled either tort or tort-like. *See Pilot Life*, 481 U.S., at 43 (suit for, *inter alia*, "'Tortious Breach of Contract'"); *Metropolitan Life, supra*, at 61-62 (suit requesting damages for "mental anguish caused by breach of [the] contract"); *Ingersoll-*

> *Rand*, 498 U.S. at 136 (suit brought under various tort and contract theories).  And, the plaintiffs in these three cases all sought remedies beyond those authorized under ERISA. *See Pilot Life, supra*, at 43, 107 S.Ct. 1549 (compensatory and punitive damages); *Metropolitan Life, supra*, at 61, 107 S.Ct. 1542 (mental anguish); *Ingersoll-Rand, supra*, at 136, 111 S.Ct. 478 (punitive damages, mental anguish).

*Davila*, 542 U.S. at 214-215.  As the Court observed, in all these cases, the plaintiffs' claims were held to be pre-empted. *Id.* at 215.  The limited remedies available under ERISA, the Court went on to explain, are an inherent part of the "careful balancing" between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans. *Id*. at 215, citing *Pilot Life*, at 55.  As such, it is also been long-established that extra-contractual damages are not permitted in an ERISA case. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146-148 (1985).

In this case, plaintiff's complaint for "negligent administration of a health plan" is grounded in the plan's decision to deny her coverage for Remicade, a prescription recommended by her treating physician.  Plaintiff offers no basis for this court to distinguish her claim that she was wrongfully denied a benefit under a health care plan provided by her employer, from those in *Davila*.  Plaintiff does not identify any "independent duty" owed by the plan or "independent relationship"

she had with the plan, which falls outside the scope of ERISA.[1] Thus, plaintiff's claim for "negligent administration of a health care plan" is preempted by ERISA and she is limited to the claims permitted by and remedies available under ERISA.

The question now becomes whether plaintiff's ERISA claim is also subject to the one year limitation provision set forth in the SPD, which is also, apparently, the controlling plan document.[2] Plaintiff does not dispute that the SPD is the controlling plan document. Rather, plaintiff argues that she never received it and that there is no evidence that she "accepted" it as the parties' agreement. Plaintiff's

---

[1] While plaintiff sues her former employer for "negligent administration of a health care plan," the proper defendant for an ERISA claim is the plan administrator, not the employer. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) (the proper defendant in an ERISA action concerning benefits is the plan administrator). Indeed, "[u]nless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Id.* Plaintiff has neither alleged, nor established, that her former employer controlled the administration of the ERISA plan at issue in this case.

[2] As explained in defendant's supplemental filing dated January 31, 2012 (as requested by the undersigned), there is not a separate "plan document" that governs the health care plan at issue in this case. (Dkt. 16). Rather, the FlexSmart SPD provides that the "handbooks" regarding each benefit program, together with "this document" comprise the summary plan description for the FlexSmart Plan. (Dkt. 16, Ex. 11A, 11B). Unlike the situation in *Amara*, there is no claimed conflict between the SPD and the plan document. Here, even though there is an SPD that governs all the benefits provided and a separate handbook that governs the health benefits, there is no claim that they are in conflict. Rather, plaintiff's claim is that she never received the FlexSmart SPD and therefore had no way of knowing about the one year limitation period. There is no evidence in this record on the issue of whether plaintiff received the health plan "handbook," which does not contain the one year limitations period.

argument about "acceptance" is immaterial. As set forth above, plaintiff admits that she participated in the employee health plan and there is no doubt that it is governed by ERISA. There is no need for her to have "accepted" the terms of the plan in order to be bound by it, given her admission that she participated in the health care plan.

As plaintiff claims that the application of the one year limitation is not reasonable because she did not have notice of it, she essentially asserts that it should be equitably tolled, although neither party has briefed this issue. Equitable tolling of a limitation period is only appropriate after a court has considered the following factors:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

*Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). In this case, defendant does not offer any evidence to contradict plaintiff's claim that she never received a copy of the SPD or that she was otherwise unaware of the one year limitation period.

Neither party offers any evidence regarding constructive notice. ERISA requires plan administrators to publish SPDs and furnish them to plan participants. 29 U.S.C. § 1024(b). The accompanying regulation provides that "the plan

administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries and other specified individuals." 29 C.F.R. § 2520.104b-1(b)(1). In particular, "[m]aterial which is required to be furnished to all participants covered under the plan ... must be sent by a method or methods of delivery likely to result in full distribution." *Id*. Hand-delivery, first class mail, and electronic delivery that result in actual receipt of the transmitted information are acceptable methods of "furnishing." *Id*.

The cases on constructive knowledge are not helpful in these circumstances, because the record is so lacking. For example, the Sixth Circuit has held that where a limitation period is contained in the plan document and the SPD provides that a plan participant can obtain a copy of that plan document at any time, constructive notice of the limitations period was provided. *Clark v. NBD Bank, NA*, 3 Fed.Appx. 500, 504 (6th Cir. 2001). In the instant case, however, plaintiff claims she never received the SPD and there is no evidence to suggest otherwise. In another case, the Sixth Circuit held that where plan participants had electronic access to an SPD, they were deemed to have knowledge of its contents. *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564 (6th Cir. 2010). Again, the record on any constructive knowledge that could be imputed to plaintiff is incomplete because defendant has not indicated whether or by what means the SPD was provided to plaintiff.

As to the remaining factors, the undersigned also concludes that the record is simply incomplete and no determination can reasonably be made. For instance, there is nothing in the record regarding the parties' positions (or any evidence for that matter) on how long the statute of limitations should be tolled or whether plaintiff's ignorance of the limitations period until she filed suit was reasonable. While plaintiff bears the burden of establishing that equitable tolling should apply,[3] defendant bears the burden of proving that it is entitled to summary judgment on its affirmative defense.[4] Both parties have failed to meet their respective burdens and thus, summary judgment should be denied without prejudice.

B.     Negligent Failure to Provide a Safe Work Environment

Plaintiff makes a claim for "negligent failure to provide a safe work environment" based on defendant's failure to protect her from a co-worker who stalked and harassed her, which ultimately forced plaintiff to leave her job. Defendant asserts that plaintiff's claim is barred by the exclusive remedy of the

---

[3] "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

[4] As the party asserting the affirmative defense of the statute of limitations, defendant has the burden of demonstrating that the statute has run. *See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). This burden requires the party asserting the defense to introduce substantial evidence to demonstrate that the events triggering the running of the statute have occurred. *Id.*; *see Campbell v. Grand Trunk Western RR Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

Michigan Worker's Disability Compensation Act (WDCA). Plaintiff argues that the WDCA only applies to personal injuries and occupational diseases and thus, her claim is not barred.

As noted by defendant, the WDCA is the "exclusive remedy for work-related injuries." *Palazzola v. Karmazin Products Corp.*, 223 Mich.App. 141, 147; 565 N.W.2d 868 (1997), citing Mich. Comp. Laws § 418.131(1). The only exception to the exclusive remedy provision is for intentional torts, where an employee is injured as the result of a deliberate act by the employer and the employer specifically intended the injury to occur. Mich. Comp. Laws § 418.131(1).

Again, the Court is faced with mislabeling of claims. The crux of plaintiff's claim is that she was "forced" to leave her job because defendant refused to appropriately deal with the harassment by a coworker. In the view of the undersigned, the parties have set up a false premise based on plaintiff's mislabeling of her claim as one for negligent failure to provide a safe work environment. That is, because plaintiff has attempted to disguise her wrongful or constructive discharge claim as a negligence claim, defendant has awkwardly attempted to fit the square peg of a wrongful discharge claim into the round role of the WDCA. This has resulted in the apparent appeal, at first blush, of plaintiff's argument that her "negligence" claim simply does not fit into the category of "personal injury or

occupational disease." The undersigned is not persuaded, however, that placing the label of "negligence" on plaintiff's claim turns it into a *viable* claim under Michigan law. While plaintiff's "claim" may not be technically barred by the WCDA, plaintiff has cited no legal authority that would permit her "negligence" claim to go forward as pleaded and she will have to seek leave to amend her complaint to clarify the legal basis of any wrongful or constructive discharge claim. Thus, the undersigned recommends that defendant's motion to dismiss this claim be granted.

C. <u>Breach of Contract</u>

Defendant argues that plaintiff has failed to state a claim for breach of contract. While plaintiff says in the final paragraph of her complaint that she seeks damages from "breach of express, implied, oral and/or written contract(s)," defendant argues that she fails to identify any contract with defendant that she claims has been breached. In response, plaintiff argues that her breach of contract claim is stated with sufficient particularity. She alleges in paragraph 37 that defendant offered to put plaintiff on paid leave while it decided what to do with the unstable and threatening coworker who was harassing her. In paragraph 38, plaintiff says she alleged that she accepted this offer. And, in paragraph 43, plaintiff asserts that defendant refused to pay her, which is the breach of the contract. According to plaintiff, the breach of contract claim has been sufficiently

pleaded and withstands a motion to dismiss. While the undersigned agrees with the view that *Twombley/Iqbal* did not change the pleading requirements for garden variety breach of contract claims as much as many defendants argue in their aftermath (*see e.g.*, *DSW, Inc. v. Zina Eva, Inc.*, 2011 WL 1336569 (S.D. Ohio 2011)), plaintiff's complaint is less than a model of clarity on this point. With the "clarification" of the response to the motion to dismiss, the nature of plaintiff's breach of contract claim becomes clear. In reviewing the complaint by itself, the waters are far more muddied. In the view of the undersigned, plaintiff should be permitted to amend her complaint to more clearly set forth her breach of contract claim.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion to dismiss be **GRANTED** in part and **DENIED** in part and that plaintiff be permitted to amend her complaint.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 9, 2012            s/Michael Hluchaniuk
                                  Michael Hluchaniuk
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on February 9, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Ari W. Lehman, Bruce M. Bagdady, Larry R. Jensen, Jr., and Jennifer H. Gonzalez.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov